UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

|  |  |
|---|---|
| PLANNED PARENTHOOD OF GREATER TEXAS SURGICAL HEALTH SERVICES, on behalf of itself, its staff, physicians, and patients, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>CITY OF LUBBOCK, TEXAS,<br><br>  Defendant. | No. 5:21-CV-114-H |

### MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTIONS FOR RECONSIDERATION AND FOR LEAVE TO AMEND

After reviewing the plaintiffs' complaint, the Court ordered jurisdictional briefing. The parties, predictably, disagreed about which cases controlled the Court's conclusion. The Court's 50-page order analyzed those cases, discussed them at length, and determined that basic principles of standing and Fifth Circuit precedent applying them made clear that the Court lacked jurisdiction. Planned Parenthood seeks reconsideration, asserting that the Court misapprehended its arguments and the controlling law. But Planned Parenthood does not address, let alone meet, the exacting standard applied to motions to reconsider—that the Court's conclusion was a manifest error of law. Instead, the motion largely restates arguments previously made. After carefully considering the parties' arguments, the Court stands by its dismissal. An injunction against the City would not bar citizens from bringing suit in state court, bind the state judiciary, or force the Ordinance's repeal. Nor would a nonbinding declaration of unconstitutionality be likely to deter those suits. And Planned Parenthood's requested amendment would be futile where, as here, it would not cure the jurisdictional defect the Court has identified. Thus, the motions are denied.

1.      **Factual and Procedural Background**

The Court's earlier opinion details the circumstances that led to this lawsuit and the reasons for dismissing the case for lack of jurisdiction. Dkt. No. 49 at 4–33 ("Op."). The Court will not restate in full the history and reasoning here. Instead, the Court will include only what is necessary to resolve the motion for reconsideration and motion for leave to amend. Thus, to summarize:

After the city council rejected a proposed ordinance to make Lubbock a "sanctuary city for the unborn," effectively outlawing abortion within the City, Lubbock voters approved the Ordinance through a ballot initiative. Among other things, the Ordinance creates a private-enforcement mechanism that allows citizens to enforce its provisions through tort suits against those who procure or provide abortions. Defendants in such suits would be subject to a range of civil damages. Despite being a duly enacted city ordinance, city officials are explicitly prohibited by the Ordinance from enforcing it. And the only courts with jurisdiction to hear such suits are state courts—not the municipal courts organized by and subject to the control of the City.

The plaintiffs in this suit—whom the Court refers to as "Planned Parenthood" for simplicity—want to continue providing abortions in Lubbock. Concerned by the prospect of civil liability under the Ordinance, as well as the costs of litigation brought under it, Planned Parenthood sued the City. The complaint asked this Court to declare the Ordinance unconstitutional, to enjoin the City and its agents from implementing it, and to declare the Ordinance contrary to Texas law. Shortly after it filed its complaint, Planned Parenthood sought emergency relief on the same grounds.

But federal courts are courts of limited jurisdiction. They exercise only that power that the Constitution and federal law assigns them. One constraint on that power is the constitutional requirement that every lawsuit before a federal court present a "case or controversy." To be a "case or controversy," a lawsuit must be brought by someone with an actual injury caused by the person they are suing. And, more importantly here, the federal court must be able to cure that injury. *Accord Whole Woman's Health v. Jackson*, No. 21-50792, 2021 WL 4128951, at *6 (5th Cir. Sept. 10, 2021) (noting, in a similar challenge to a similar law, that "to reach the merits a federal court would have to exercise 'hypothetical jurisdiction,'" and that the "Supreme Court 'decline[d] to endorse such an approach because it carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers'") (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998)). Suspecting that the last aspect of standing—the redressability requirement—might have been lacking, the Court ordered the parties to brief the issue of whether the Court had jurisdiction over this case. Dkt. No. 18.

After considering the parties' written and oral arguments, the Court concluded that it lacked jurisdiction. Op. at 1–4, 12–33. Relying primarily on two Fifth Circuit cases, the Court noted that any injunction that the Court granted would not be effective against private litigants who might bring lawsuits pursuant to the Ordinance or the state courts that would hear those suits. The City, of course, exercises no control over private litigants or the state courts. And the Court cannot order the City to repeal the Ordinance. So nothing the Court could say or do would prevent Planned Parenthood from being sued in state court under the Ordinance. Because the Court could not redress the alleged injury, Planned Parenthood lacked standing, and the Court dismissed the suit accordingly.

Twenty-eight days later, Planned Parenthood asked this Court to reconsider. Dkt. Nos. 51 (motion); 52 (brief). It asserts that the Court's jurisdictional conclusions "rest[ ] on a misapprehension of [Planned Parenthood's] arguments and of controlling law." Dkt. No. 52 at 6. It also asked to amend its complaint to drop its state-law claims—the claims the Court said it would abstain from addressing even if standing were satisfied. Dkt. No. 53. In response, the City noted that Planned Parenthood's motion relies almost exclusively on arguments previously briefed, argued, and rejected. *See* Dkt. No. 54 at 7. The City also argued that the Court's conclusions cannot be "manifestly erroneous"—the standard it argues governs motions to reconsider—simply because Planned Parenthood disagrees with them, and that the proposed amendment would be futile. *Id.* at 7–11, 12–13. Planned Parenthood has replied, Dkt. No. 55, and the motion is ripe for decision.

**2.    Motions to reconsider are granted when a district court's conclusions are indisputably wrong.**

No provision of the Federal Rules explicitly authorizes a motion to reconsider like that filed by Planned Parenthood. But Rule 59(e) allows a party to move within twenty-eight days to alter or set aside a judgment, and courts have construed that rule to permit district courts to reexamine and alter their findings and conclusions in certain, limited circumstances. *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 128 (5th Cir. 2019). For the Court to do so, a movant must demonstrate that the motion is necessary to (1) correct manifest errors of law or fact upon which the judgment is based; (2) allow for consideration of newly discovered or previously unavailable evidence; (3) prevent a manifest injustice, such as that arising from serious misconduct by counsel; or (4) address an intervening change in controlling law. 11 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2810.1, 157–62 (3d ed. 2012) (Wright & Miller); *Demahy v. Schwarz Pharma,*

– 4 –

*Inc.*, 702 F.3d 177, 182 (5th Cir. 2012) (citing *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003)).  A motion to reconsider may not be used to relitigate old matters or to present evidence or arguments that should have been offered before judgment was entered.  *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020); Wright & Miller § 2810.1, 163–64; *see also Marseilles Homeowners Condo Ass'n v. Fidelity Nat. Ins. Co.*, 542 F.3d 1053, 1058 (5th Cir. 2008).

District courts have considerable discretion in balancing the competing needs for accuracy and finality when faced with a motion to reconsider.  *See Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993).  Reconsideration of a judgment is an extraordinary remedy that should be granted sparingly.  *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).  So only when a district court commits an error that is "plain and indisputable, and that amounts to a complete disregard of the controlling law[,]" can its decision be "manifestly erroneous."  *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).

3.  **Planned Parenthood has not shown that any of the Court's conclusions are indisputably wrong.**

Planned Parenthood seeks reconsideration because, in its view, the Court's "ruling rests on 'manifest errors of law.'"  Dkt. No. 52 at 10 (quoting *T. B. by & through Bell v. Nw. Indep. Sch. Dist.*, 908 F.3d 1047, 1051 (5th Cir. 2020)) (brackets omitted).  It identifies three such "errors," which the Court addresses in turn.  In short, however, in light of binding precedent that addressed situations surprisingly similar to those before the Court, the Court does not believe it erred, much less manifestly erred, in dismissing for lack of jurisdiction.

### A. It is disputable whether *Allstate* is distinguishable from this case.

In its Opinion, the Court concluded that the Fifth Circuit's en banc decision in *Okpalobi v. Foster* controlled the outcome of this case. Op. at 20–22 (citing 244 F.3d 405 (5th Cir. 2001)). *Okpalobi* arose from circumstances much like these: Louisiana passed a law authorizing private civil suits in state court against those who aided and abetted abortions, while restricting state officials from playing any role in the law's enforcement. 244 F.3d at 409. And much like Planned Parenthood here, the *Okpalobi* plaintiffs—who feared liability from such suits—sued in federal court to enjoin the law's enforcement. *Id.* at 410. The defendants there were Louisiana's Governor and Attorney General, the parties amenable to suit under the Eleventh Amendment and *Ex parte Young*, 209 U.S. 123 (1908). *Id.* at 410–11. But the problem for the *Okpalobi* plaintiffs was that neither the Governor nor the Attorney General could enforce the law. *Id.* at 417. And because injunctions mandate some sort of action or inaction on the part of a defendant, no injunction the *Okpalobi* district court could craft would actually bar private litigants from bringing suit or prevent state courts from adjudicating those suits. *Id.* at 421 ("Indeed, if there is no act, or potential act, of the state official to enjoin, an injunction would be utterly meaningless. Here, there is no act, no threat to act, and no ability to act."). Thus, the en banc court held that the plaintiffs lacked standing, and it reached that conclusion regardless of whether the state defendants were immune from suit. *Id.* at 426–27.

The upshot of *Okpalobi* was confirmed in *K.P. v. LeBlanc*, 729 F.3d 427 (5th Cir. 2013) (*LeBlanc II*). There, the plaintiffs challenged the operation of a Louisiana law (a different provision of the same enactment at issue in *Okpalobi*) that restricted abortion providers from accessing a state-run medical-malpractice insurance fund. *Id.* at 431–32.

Subsection (A) of the law created strict liability for abortion providers, while Subsection (C)(2) barred providers from participating in the insurance fund. *Id.* at 436. Providers sued the board established to oversee the fund's operation; they did not sue the patients who sued them. *Id.* at 433. Although the Board did not enjoy immunity—making it like the City here—the Fifth Circuit held that the plaintiffs lacked standing to challenge Subsection (A) because the Board played no role in bringing suit against the plaintiffs; only patients could do that. *Id.* at 437. The plaintiffs did, however, have standing to challenge the Board's interpretation of Subsection (C)(2) because the Board was the entity responsible for determining which physicians could participate in the state-run program. *Id.*

Planned Parenthood pointed (and points again) to another Fifth Circuit case, *Allstate Insurance Co. v. Abbott*, that it said bound this Court to exercise jurisdiction over this suit. Dkt. No. 32 at 5, 10–14 (citing 495 F.3d 151 (2007)); Dkt. No. 52 at 10–20. Seeking to protect consumers, Texas passed a law that authorized civil suits against car-insurance companies who owned auto-repair shops. 495 F.3d at 156–57. Damages and penalties were available; the latter went to the state's general revenue fund. *Id.* at 157. Just as in *Okpalobi* and *LeBlanc II*, state officials had no role in enforcing the law. *Id.* Allstate sued Texas's Attorney General in state court under the Texas Declaratory Judgment Act alleging that the scheme violated the negative implication of the Commerce Clause and the First Amendment, and seeking an injunction prohibiting the law's enforcement or recognition. *Id.* But, and critically, the Attorney General then removed the case to federal court. In doing so, Texas waived the immunity it typically enjoys thanks to the Eleventh Amendment. *Id.* at 158–59. And that made all the difference. Because Texas itself—rather than the Attorney General—was amenable to suit, an injunction against the state would

provide effective relief to Allstate because the judges tasked with enforcing the law were agents and officers of a defendant—the state—in the case. *Id*. at 159–60; *cf.* Fed. R. Civ. P. 65(d)(2) (noting that injunctions bind the "parties' officers, agents, servants, employees, and attorneys").

Not so here. While it is true that the City, unlike the state, does not enjoy the protections of the Eleventh Amendment, that is a distinction without a difference given the undisputed facts before the Court. *Cf. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) ("The bar of the Eleventh Amendment to suit in federal courts . . . does not extend to counties and similar municipal corporations.") (citations omitted). Regardless of the City's lack of immunity, an injunction against it in this case would have no effect because the City has no authority over private litigants who might sue or the state courts that would hear those suits. In *Allstate*, where the state itself was being sued, an injunction would provide effective relief because the injunction would run against the state's officers and agents, including state-court judges. Here, the judges tasked with enforcing the Ordinance are not officers or agents of the City. Op. at 23. So even though, like Texas in *Allstate*, the City can be sued directly, no injunction the Court could issue could give power to the City over private litigants or the state-court judges who will oversee the Ordinance's enforcement if a suit were brought. These unique circumstances mean that *Okpalobi* and *LeBlanc II* control this case—not *Allstate*.

Planned Parenthood ignores this distinction when it says that, "[b]ecause the City of Lubbock enacted the Ordinance and because it lacks immunity and thus is the real defendant in this case, causation and redressability are 'easily satisfied.'" Dkt. No. 52 at 13 (quoting *Allstate*, 495 F.3d at 159). No one—least of all the Court, *see* Op. at 19—contends

that causation is not satisfied here. It is redressability that is, and always has been, the problem for Planned Parenthood. *E.g.*, Op. at 2, 19–33.

To avoid that problem, Planned Parenthood overreads *Allstate*'s "easily satisfied" language. It contends that the holding of *Allstate* is that "redressability is satisfied by a declaration of unconstitutionality against the non-immune government that adopted the law that causes the injury-in-fact, even if the law is enforced only through private lawsuits." Dkt. No. 54 at 13. That is an incomplete understanding of *Allstate*. Only by adding "brought in courts established by and subject to the nonimmune government" to the end of Planned Parenthood's synthesis can *Allstate* and *Okpalobi* coexist, as Planned Parenthood concedes they must. Dkt. No. 52 at 10–11 (arguing that the Court's conclusion means *Okpalobi* and *Allstate* "cannot be squared"); *accord* Op. at 22 n.8 (noting that the Court was not invoking the rule of orderliness and instead was reconciling the two cases).

The first error Planned Parenthood identifies in its motion is thus no error at all. And even if it were erroneous, it certainly is not manifestly erroneous given the extensive briefing and analysis on the question. *See, e.g.*, Dkt. Nos. 31 at 5–8 (City's brief); 32 at 10–14 (Planned Parenthood's Brief); 39 at 3–6 (City, again); 40 at 1–7 (Planned Parenthood, again); Dkt. No. 48 ("Tr.") at 12, 28–29, 53–54, 60–62. Planned Parenthood has not identified a controlling precedent that the Court ignored or indisputably misconstrued. It merely disagrees with the Court's reading of controlling precedent. But whenever a Court makes conclusions of law, one party will disagree. If that were the sole prerequisite to the granting of a motion for reconsideration, such motions would not be "granted sparingly." *See Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Because it is disputable

whether *Allstate* is distinguishable, Planned Parenthood is not entitled to reconsideration of that conclusion.

> **B.     It is disputable whether a declaratory judgment would redress Planned Parenthood's injury.**

Planned Parenthood renews its arguments that a declaration from this Court that the Ordinance is unconstitutional would provide it with relief, thus satisfying the redressability requirement.  Dkt. No. 52 at 15; *see also* Dkt No. 32 at 14 (same, noting that in this case there "is no practical difference between a declaration and an injunction").  It says a declaration, though less powerful than an injunction, would deter lawsuits by private parties, encourage the City council to repeal the Ordinance, and act as persuasive authority for state-court judges presiding over suits brought under the Ordinance.  *See* Dkt. No. 52 at 18, 21–22.

As to deterring suits by private individuals, Planned Parenthood concedes that a declaratory judgment will not prevent such suits from being filed.  Dkt. No. 40 at 10.  Nevertheless, it maintains that a declaration could offer relief in the form of deterrence.  Dkt. No. 52 at 18.  In support of this contention, it cites—for the first time—three cases, each of which is distinguishable from its own.  *Id.* at 16.  Such belated authorities cannot be the basis for granting Planned Parenthood's motion, *see Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 568 (5th Cir. 2003), but the Court addresses them because even if they could, they would not justify reconsideration here.

First, Planned Parenthood asserts that *Powell v. McCormack* stands for the proposition that "a request for declaratory relief may be considered independently of whether other forms of relief are appropriate."  Dkt. No. 52 at 16 (citing 395 U.S. 486, 517–18 (1969)).  In *Powell*, nine members and officers of Congress were sued by a member and thirteen of his

– 10 –

supporters for expelling the member in the wake of an expenses scandal. The Supreme Court concluded that, although it could not compel the defendants—which included the Speaker of the House and the Sergeant at Arms—to act, the district court had jurisdiction because it could issue a declaratory judgment in the plaintiff's favor. But, as explained above and unlike the Speaker in *Powell* (who oversaw the plaintiff's expulsion from the House of Representatives), the City has not caused similar harm to Planned Parenthood. In fact, other than the public-enforcement mechanism that is not currently in effect, the Ordinance bars the City from enforcement through civil suits. Op. at 7–9. So *Powell* is distinguishable.

Second, Planned Parenthood offers *MedImmune v. Genentech, Inc.* for a similar point. Dkt. No. 52 at 16 (citing 549 U.S. 118, 127 (2007)). There, a patent licensee sued a licensor and sought a declaratory judgment as to its rights under their contract. 549 U.S. at 122–25. The Supreme Court held that the licensee did not need to break the agreement to seek a declaration that the patent was invalid, unenforceable, or uninfringed. *Id*. at 137. Of course, the licensor could enforce the agreement against the licensee if the licensee did breach the contract. And that is what makes *MedImmune* distinguishable: The City cannot enforce the Ordinance against Planned Parenthood so, unlike a declaratory judgment in a patent-license dispute, there are no rights to fix between the parties.

And finally, *Aetna Life Insurance Co. v. Haworth* counsels that, because there is purportedly "'a dispute between parties who face each other in an adversary proceeding,'" the dispute is "'manifestly susceptible of judicial determination'" by a declaratory judgment. Dkt. No. 52 at 16–17 (citing 300 U.S. 227, 242 (1937)). *Aetna* arose between a life insurer and an insured's beneficiary. Aetna sought to determine its rights and obligations toward

– 11 –

Haworth for her husband's disability insurance through a declaratory-judgment action. 300 U.S. at 237–38. The Supreme Court allowed the action to proceed because the district court could fix the rights and obligations of the parties in the future and, in so doing, preempt disputes between them. *Id.* at 243. The problem with analogizing *Aetna* to this case is that there will not be an "adversary proceeding" between the City and Planned Parenthood because, again, the City is prohibited from enforcing the Ordinance. The only "adversary proceeding" between the two is this suit, and permitting a plaintiff to manufacture standing simply by filing suit would make Article III's "case or controversy" requirement into little more than a paper tiger. *See California v. Texas*, 141 S. Ct. 2104, 2115 (2021) ("[J]ust like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement.").

Planned Parenthood also reinvokes *Steffel v. Thompson*, 415 U.S. 452 (1974), *Franklin v. Massachusetts*, 505 U.S. 788 (1992), and *Fusilier v. Landry*, 963 F.3d 447 (5th Cir. 2020). Dkt. No. 52 at 18–21. The Court addressed these cases in some depth in its opinion. Op. at 27–31. Briefly, the defendants in *Steffel* were responsible for enforcing the challenged law; *Franklin* involved a suit against the President and the Secretary of Commerce, whose power flows from the same sovereignty as the Supreme Court's, making it much more likely that the President would abide by the Court's determination of the Secretary's obligations; and *Fusilier* was a challenge to Louisiana's electoral-districting plan brought under the Voting Rights Act, which abrogated the states' sovereign immunity. Op. at 24–31. The material differences between each and this case were previously explained in the Court's opinion, but, in any event, they are self-evident.

Besides introducing new authorities and recounting old ones, Planned Parenthood also rehashes its argument that a declaratory judgment would encourage the City to repeal the Ordinance. *See, e.g.*, Tr. at 17–18. The Ordinance's history weighs heavily against this conclusion. Recall that the Ordinance was passed by voters via referendum after the City council refused to adopt it. Op. at 4–5. Nevertheless, Planned Parenthood argues that the councilmembers' oaths to support the Constitution would lead them to repeal the Ordinance if this Court declared it unconstitutional. Dkt. No. 52 at 22 & n.8.

There are at least two problems with this argument. First, it is unclear whether the Council can repeal an Ordinance adopted by a ballot initiative. It would seem odd that the Council could reverse the will of the voters to reverse the Council, though the City's Charter seems to implicitly permit such a process. *Compare* Article IX § 15 (standard legislative process) *with* Article IV § 1 (initiative and referendum process).

But even if the Council could repeal the Ordinance through regular order, the Court has no reason to believe that a declaratory judgment of the Ordinance's unconstitutionality would inspire such an effort. The Council already rejected the Ordinance; that is why the Ordinance's backers had to resort to the referendum process in the first place. Dkt. No. 14 at 110, 130–32. A declaration of unconstitutionality from this Court would do little more than echo the council's rejection. To be sure, such a declaration might have *some* effect, but it is Planned Parenthood's burden to show that it would lead to the Ordinance's repeal. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Although the Court believes its views deserve consideration, it will not believe that its powers of persuasion are so great that the Council would repeal an Ordinance it has already rejected and which the voters of Lubbock made clear they wanted anyway.

And even if the Council were to repeal the Ordinance, nothing the Court could do would prevent the cycle of referendum, lawsuit, declaration, and repeal from repeating itself. Such a process would needlessly tax the parties and this Court, all while state courts remain both open to Planned Parenthood and able to break the cycle by making binding declarations of the Ordinance's enforceability.

Planned Parenthood also asserts that a declaratory judgment from this Court would "discourage other judges from applying the Ordinance should such lawsuits be filed." Dkt. No. 52 at 21. But comity counsels in favor of allowing state-court judges to reach their own conclusions without the superintendence of a federal district court whose judgments cannot bind them. *See Penrod Drilling Corp v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) (noting that Texas's courts are bound only by the decisions of the Supreme Court and higher state courts). Put another way: A determination of rights that no one need abide is no determination at all; it is the epitome of an advisory opinion.

Even assuming state-court judges were to agree with a declaratory judgment in Planned Parenthood's favor from this Court, Planned Parenthood would still be forced to incur the costs of appearing and invoking this Court's judgment. Planned Parenthood seeks to avoid not only its potential civil liability under the Ordinance, but the costs of litigating those suits in the first place. *See, e.g.*, Dkt. No. 52 at 7; Dkt. No. 40 at 13 n.2. Planned Parenthood *hopes* that putative plaintiffs will be deterred from bringing suit by a declaration from this Court but, failing that, it *presumes* that state-court judges will be persuaded to rule in its favor by a declaration from this Court. *See* Dkt. No. 40 at 9–10 ("[A] decision invalidating the ordinance will inform anyone still temped to sue . . . that their suit *will* fail. . . . Such a ruling might not guarantee that no one would ever file another lawsuit

– 14 –

purportedly under the Ordinance."). For redressability purposes, a court's remedy need not forestall *every* injury a plaintiff will suffer, *accord Massachusetts v. EPA*, 549 U.S. 497, 525 (2007), but Planned Parenthood has not shown that a declaratory judgment would forestall *any* injury it faces. *Warth v. Seldin*, 422 U.S. 490, 505–06 (1975) ("But the record is devoid of any indication that . . . were the court to remove the obstructions attributable to respondents, such relief would benefit petitioners."); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 44 (1976) ("[U]nadorned speculation will not suffice to invoke the federal judicial power."); *Dep't of Texas, Veterans of Foregin Wars v. Texas Lottery Comm'n*, 760 F.3d 427, 432 (5th Cir. 2014) (en banc) ("For a plaintiff's claim to be redressable, it must be likely, as opposed to merely speculative, that a favorable decision will redress the plaintiff's injury." (internal quotation marks omitted)). Planned Parenthood offers nothing but hope and unsupported assumptions—speculation, really—that a declaratory judgment would redress its injuries. The Constitution requires more. *Lujan*, 504 U.S. at 561.

A live controversy between parties is not sufficient to confer standing. The Court has made clear (twice, now) that the defect in Planned Parenthood's standing lies not in injury or causation, but in redressability. *E.g.*, Op. at 33. None of Planned Parenthood's authorities—new or old—explains how a declaratory judgment would remedy its injuries. Thus, the Court's conclusion that Planned Parenthood lacks standing is well supported by the facts and the law, and Planned Parenthood falls well short of showing that the Court manifestly erred.

    **C.**    **It is disputable whether pre-enforcement review is essential.**

Planned Parenthood also reiterates its argument that pre-enforcement review is essential. Dkt. No. 52 at 24–27. Putting aside both that the Court has already addressed

this argument, *see* Op. at 29–33, and that the Ordinance is currently in effect, nothing about the right at issue affects the Court's ability to remedy Planned Parenthood's injury. As explained above, even if this Court were to issue a declaratory judgment, private plaintiffs could still sue Planned Parenthood in state court.[1] Planned Parenthood has informed the Court that the costs of defending itself from these suits would likely be substantial. *See* Dkt. No. 52 at 20. It will be forced to incur those costs without the certainty that state courts would mirror an order from this Court. No matter what, then, Planned Parenthood would have to fight this fight again in the state courts. But of all the cases Planned Parenthood invokes to underscore the importance of pre-enforcement review of abortion restrictions, not one arose in a context like this, where enforcement is left exclusively to civil plaintiffs. *Id.* at 26. And, given the parties' arguments on this issue, it is far from indisputable that Planned Parenthood is entitled to a pre-enforcement declaratory judgment in its favor.

\*           \*           \*

It is an odd feature of motions to reconsider that, even when they are denied, they are granted in part. The Court, with the help of the parties, has reconsidered its prior conclusions. They remain unchanged. Federal courts do not possess carte blanche to right all wrongs presented to them. Only when the Court has the ability to remedy the alleged injury through a favorable decision does a plaintiff have standing to sue. The central flaw in Planned Parenthood's argument is that nothing this Court can order the City to do would

---

[1] Planned Parenthood attached to its motion a Facebook post that threatens it with litigation under the Ordinance if it performs abortions. Dkt. No. 52-2. Planned Parenthood does not argue that this is a new fact that justifies reconsideration but instead uses it to support its argument that it faces immediate injury as a result of the Ordinance. Dkt. No. 52 at 10 n.4, 25. Of course, the Court has never suggested that there is no injury or causation here. *See supra* at 3.A; Op. at 2, 19–33.

forestall the harm Planned Parenthood claims to face. The Court cannot order the City to repeal its Ordinance. *See* Dkt. No. 48 at 17 (Planned Parenthood conceding the same). Nor can the City prevent private enforcement actions from being filed. *See* Dkt. No. 40 at 10–11. And it is undisputed that any order from this Court would not bind the state courts in resolving those disputes. Despite Planned Parenthood's assertion otherwise, the Court did not "misapprehend" the plaintiffs' arguments or the case law. To the contrary, the Court carefully analyzed the relevant precedent, and it leaves little doubt that the plaintiffs lack standing. Thus, the Court's dismissal for lack of jurisdiction was not erroneous—much less manifestly erroneous, the prerequisite to an order granting reconsideration.

4. **Planned Parenthood's motion to amend would be futile because it still lacks standing on the claims it seeks to press.**

The Court's Opinion noted that, even if it had jurisdiction over the case, it would decline to address the state-law issues Planned Parenthood raised in its complaint. As the Texas Solicitor General noted, "both sides in this case have respectable arguments to make about the scope of a city's authority to expand tort liability," Dkt. No. 47 at 3 (citing *City of Corpus Christi v. Texas Driverless Co.*, 190 S.W.2d 484 (Tex. 1945)), and the Court found that it is currently unclear under Texas law whether Lubbock had authority to create civil liability between private parties. Op. at 41. If the City cannot, then the Court would not need to address whether the Ordinance violates the Constitution because the Ordinance would be a nullity. But whether the Ordinance violates state law is a determination for the state courts. *Accord Murdock v. Memphis*, 87 U.S. (20 Wall.) 590, 626 (1874) ("The State courts are the appropriate tribunals, as this court has repeatedly held, for the decision of questions arising under their local law, whether statutory or otherwise."); *see Bulkley & Assoc., L.L.C. v. Dep't of Indus. Rels.*, 1 F.4th 346, 355 n.52 (5th Cir. 2021) ("Absent a conflict

with federal law, the last word on Texas law belongs to the Texas Supreme Court.") (citing *Murdock*, 87 U.S. at 626). The *Pullman* abstention doctrine exists for precisely such situations: Federal courts should abstain from deciding the issue when state law is uncertain and a state court's clarification of that law might make the court's constitutional ruling unnecessary. *Texas Ent. Ass'n v. Hegar*, 10 F.4th 495, 508 (5th Cir. 2021); *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941).

Planned Parenthood asks that the Court permit it to amend its complaint to eliminate the state-law claims, so as to ensure there is no need for *Pullman* abstention. Dkt. No. 52 at 8. But even if the state-law claims that the Court cannot answer were excised from this litigation, the *sine qua non* of jurisdiction would still be lacking. The state-law claims did not contribute to the Court's conclusion that it cannot redress the injury Planned Parenthood faces. Regardless of *why* the Court issued an injunction, any injunction would be wholly ineffective at redressing Planned Parenthood's harm. Because eliminating the state-law claims would make no difference to the jurisdictional analysis that drove the outcome, the proposed amendment is futile. And although the Court grants leave to amend freely, it does not allow parties to amend their pleadings to no effect. *E.g.*, *Simmons v. Sabine River Auth. La.*, 732 F.3d 469, 478 (5th Cir. 2013) (affirming denial of leave to amend where sole federal claim was dismissed and the proposed amendment failed to include a basis for the exercise of supplemental jurisdiction over the plaintiff's state-law claims); *see also Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (holding that the plaintiff's inability to show that amendment would confer standing to bring pre-enforcement challenge to city ordinance warranted denial of leave to amend). Accordingly, the Court denies Planned Parenthood's motion to amend.

## 5. Conclusion

To paraphrase Tolstoy: Happy parties are all alike; every unhappy party is unhappy in its own way. Planned Parenthood is unhappy with the Court's application of Fifth Circuit Precedent and urges reconsideration. But twenty years ago, the en banc Fifth Circuit provided a roadmap to determine standing under circumstances remarkably similar to those present here. "We should ask whether enjoining defendants from enforcing the statute complained of will bar its application to these plaintiffs." *Okpalobi*, 244 F.3d at 430 (Higginbotham, J., concurring). There, the answer was no because the defendants "had no such responsibility for enforcing the statute." *Id*. That reality "ought to be the beginning and the end of this appeal." *Id*.

The same is true in this case, and nothing in Planned Parenthood's motion to reconsider demonstrates that the Court wrongly concluded—let alone manifestly erred in concluding—that the plaintiffs lacked standing. Neither its reassertion of previously made arguments nor its citation to new authorities changes the fact that enjoining the City or issuing a declaratory judgment would prevent private-enforcement actions or bar the state courts from hearing them. Thus, as in *Okpalobi*, the plaintiffs' alleged injury is not likely to be redressed by a favorable decision, and the Court dismissed for lack of jurisdiction. Planned Parenthood's motions for reconsideration (Dkt. No. 51) and to amend its complaint (Dkt. No. 53) are denied.

So ordered on October 13, 2021.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE